# BARBER *v.* SPALCKHAVER.

PATENTS; INTERFERENCE; APPEAL AND ERROR; CONCEPTION; PRIORITY.

1. Where in an interference proceeding the patent office has ruled that there is a patentable difference between the structures of the parties, that question is not open in this court; but the similarity in the two structures may be material in the determination of the question of conception.

2. Priority of conception will be awarded in interference proceedings to a senior applicant who, three months before the junior party's earliest possible date of conception, made disclosure to a draftsman for the purpose of the making of drawings which were immediately begun and when finished embodied the issue, and exhibited his original freehand drawings to a patent attorney's draftsman, with a view to making application for a patent, the latter testifying that the invention was then explained to him.

Patent Appeal No. 889.  Submitted January 15, 1914.  Decided March 2, 1914.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.          *Reversed.*

The facts are stated in the opinion.

*Mr. Walter F. Rogers* for the appellant.

*Mr. James Q. Rice* and *Mr. M. C. Massie* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal from a decision of the Patent Office in an interference case awarding priority of invention to the junior party, William Spalckhaver, the appellee here.  The issue is expressed in a single count, as follows:

"The combination with a collecting cylinder, of a forwarding

cylinder provided with folding means coacting therewith, means on the forwarding cylinder for taking sheets from the collecting cylinder, web delivery devices for said cylinders, web cutting devices, means for advancing a web, said means running at a lesser surface speed than the speed of the web delivery devices, means for cutting sheets from this web, and means for bringing the sheets up to the speed of, and delivering them to the forwarding cylinder beyond the cutting line of the web-cutting devices to be associated with and to be folded off with the sheets delivered to it by the collecting cylinder."

The object of the invention is to produce a mechanism for use in printing machines by which specially printed covers and sheets may be associated with the other sheets of a periodical without subjecting such covers and sheets to a second trimming. This is accomplished by bringing the cover and specially printed sheets into association with the main sheets *after* those sheets have been cut from the main web. The claim specifies that this added matter must also be cut from a web.

Spalckhaver alleged conception of the invention in December, 1905, and reduction to practice in May, 1906. His application was filed May 22, 1907. The Patent Office tribunals agreed in awarding him the date of December 9, 1905, as his date of conception, and we accept that finding here. Barber alleged that he conceived and disclosed the invention on September 6, 1905. His application was filed October 2, 1906.

Mr. Barber, chief draftsman and designer for C. B. Cottrell & Sons Company, of Westerly, Rhode Island, manufacturers of printing-press machinery, testified that on September 6, 1905, he disclosed the subject-matter of this interference to a Mr. Austin, a draftsman in the employ of the Cottrell Company. Mr. Austin testified that, under the directions of Mr. Barber, he commenced elaborate scale drawings of this invention on that date. These drawings were completed some time prior to January 26, 1906, and were produced in evidence. They bear the marginal notation, "Cover and Center Page Insert Feeding Mechanism, Commenced Sept. 6, 1905. C. B. Cottrell and Sons Co." Mr. Austin stated that this notation was made in

conformity to the practice of the office. The Patent Office tribunals agreed that these drawings fully disclose the issue, and appellee concedes that the *first* of the five sheets thereof discloses it. On September 27, 1905, Mr. Barber had an interview with a Mr. Barry, a draftsman in the employ of the firm of patent attorneys, Brown & Seward, who were to file Mr. Barber's application for this and a closely related invention. Mr. Barber then exhibited to Mr. Barry two free-hand sketches which he had previously made, and Mr. Barry placed thereon the receiving stamp of his firm, with his own initials underneath the date. The object of this interview, according to Mr. Barber's testimony, was fully to acquaint Mr. Barry with the two inventions. "At the time the disclosure was made to Mr. Barry," says Mr. Barber, "the drawings for the case were being prepared (the Austin drawings), and knowing that he (Barry) would either make the drawings (Patent Office drawings) or that they would be made under his supervision, I took the matter up with him that he might have a thorough understanding of the case when the drawings (Austin drawings) were received, when it was entered in the office of Brown & Seward." This testimony is corroborated by Mr. Barry, who prepared the Patent Office drawings for the invention here in issue. Mr. Barry testified that, in the interview of September 27th, Mr. Barber explained both applications, and that he prepared the drawings for both at the same time.

In the free-hand sketches which were exhibited to Mr. Barry on September 27th the insert sheets are fed from a so-called cut-sheet supply, while in the claim here involved, as previously noted, the insert sheets are supplied from a continuous web. Admittedly, the mechanism by which the insert sheets are supplied from a continuous web is old, and, given the idea embodied in the September 27th sketches, a mechanic skilled in the art probably would have had no difficulty in producing the mechanism of the claim in issue. But be that as it may, since the Patent Office has ruled that there is a patentable difference between the two structures, the question is not open here. The

similarity of the two structures, however, is material in considering the question of conception. According to evidence which is beyond contradiction, the drawings embodying the structure of the issue were commenced by Mr. Austin on September 6, 1905; and these drawings were in the hands of Brown & Seward for the purpose of a patent application on January 26, 1906. When, therefore, Mr. Spalckhaver entered the field on December 9, 1905, these drawings had been under way for more than three months. To our minds it would be almost an absurdity to rule that this draftsman, familiar as he was with mechanism of this sort, could work on these drawings for more than three months, under Mr. Barber's directions, without knowing the result Barber had in mind and the method of achieving it. Nor can the testimony of Mr. Barry be lightly cast aside. In the interview between him and Mr. Barber the free-hand sketches were examined, and he states that both forms of the invention were explained to him. This independent testimony clearly shows that Mr. Barber then had conceived both forms of the invention.

Having in mind, therefore, the nature of this invention and that the draftsman Austin commenced drawings of it on September 6, 1905; that it was explained to Mr. Barry in the latter part of that month; and that the drawings were completed some time prior to January 26, 1906,— we have no hesitancy in reaching the conclusion that Barber has established a date of conception prior to December 9, 1905, the earliest date that can be awarded Spalckhaver. Since Barber, thereafter, was reasonably diligent, the award of priority should have been in his favor.

The decision of the Commissioner is reversed.     *Reversed.*